IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID H. TOBEY

    v.  :  Civil Action No. DKC 10-1358
                       Criminal No. DKC 03-0151

UNITED STATES OF AMERICA

**MEMORANDUM OPINION**

A provision of the Adam Walsh Child Protection and Safety Act of 2006 empowers the government to certify a person in the custody of the Bureau of Prisons as "sexually dangerous." 18 U.S.C. § 4248(a). Once certified, the individual must remain incarcerated – even after his originally sentenced prison term has ended - until a district court conducts a hearing. *Id.* At the hearing, the district court may either discharge or civilly commit the certified individual. *Id.* § 4248(d). One question generated by this scheme is simple: how does the time between a prisoner's certification and hearing affect a term of supervised release that follows the prisoner's original sentence?

Petitioner David H. Tobey has been certified as a sexually dangerous person. Because of this certification, Tobey has remained in federal custody after completing his original term of imprisonment almost four years ago. He has now filed a petition for habeas corpus in which he contends that he has

finished his term of supervised release, despite the fact that he has never actually been released. (ECF No. 1). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Tobey's motion must be denied. A prisoner's detention following certification delays the start of the prisoner's supervised release period.

## I. Background

In May 2003, Tobey pled guilty to one count of unlicensed dealing in firearms. He was then sentenced to five years of imprisonment, with three years of supervised release to follow. Tobey was originally scheduled for early release, which would have permitted him to complete his term of imprisonment on September 7, 2007. Had he been released then, and assuming no interruptions in the supervised release period, Tobey would have finished his term of supervised release on September 7, 2010.

A single day before the end of his original prison term, however, the government filed a certification pursuant to § 4248 in the United States District Court for the Eastern District of North Carolina. *See United States v. Tobey*, No. 5:07-hc-02166-BO (E.D.N.C. filed Sept. 6, 2007), ECF No. 1. The certification cited Tobey's previous convictions in both Maryland and Florida for sex acts involving children. It also noted his diagnosis of pedophilia. Because of his certification as a sexually

2

dangerous person, Tobey's release was automatically stayed. Indeed, the Fourth Circuit described the events as follows:

> The nine Respondents [including Tobey] are incarcerated at the Federal Correctional Institute at Butner, North Carolina, and they were — when their respective certifications were made — about to be released from BOP custody and begin serving previously imposed terms of supervised release. Shortly before each Respondent was to be released, however, the government instituted a § 4248 civil commitment proceeding, filing a certification that the particular Respondent was in the custody of the BOP, a "sexually dangerous person," and "sexually dangerous to others." Pursuant to § 4248(a), the filing of these certifications stayed release of the Respondents.

*United States v. Broncheau*, No. 10-7618, 2011 WL 2043956, at *2 (4th Cir. May 26, 2011) (footnote omitted).

Although Tobey was supposed to receive a civil commitment hearing, none has yet been held. Tobey's case was first held in abeyance until the appeals process in a related § 4248 case was finished. *See United States v. Comstock*, 507 F.Supp.2d 522, 559 (E.D.N.C. 2007), *aff'd*, 551 F.3d 274 (4th Cir. 2009), *rev'd*, 130 S.Ct. 2828 (2010), *on remand*, 627 F.3d 513 (4th Cir. 2010). Because the related case eventually went before the Supreme Court, Tobey waited almost two and a half years before the lower court took any action in his case. Finally, on June 11, 2010, the district court lifted the stay and denied a motion from Tobey seeking his own release.

3

Two weeks later, on June 23, 2010, Tobey filed a second motion to dismiss the government's certification. This time, the district court granted Tobey's motion and ordered that he be released within 30 days. *United States v. Broncheau*, 759 F.Supp.2d 628 (E.D.N.C. 2010). Before the order took effect, however, the government appealed the decision and obtained an emergency stay from the United States Court of Appeals for the Fourth Circuit. In a recent published decision, the Fourth Circuit vacated and remanded the district court's order. *Broncheau*, 2011 WL 2043956.

Since his certification as a sexually dangerous person, Tobey has asked the court to clarify the start date of his supervised release period three times. The first of these filings was received on January 20, 2009. It was construed as a petition under 28 U.S.C. § 2241 and transferred to the Eastern District of North Carolina. *See Tobey v. Warden*, No. DKC 09-0237, slip. op. (D.Md. Feb. 26, 2009), ECF No. 2. That court dismissed the petition without prejudice because Tobey failed to "resolve certain deficiencies in the initial filing." *Tobey v. Warden*, No. 09-2145, slip. op. (E.D.N.C. Feb. 4, 2011).

Tobey wrote this court again in a letter received on June 4, 2009. He emphasized that he did not wish to file a § 2241 petition; instead he merely wanted to know if he was "receiving credit towards Supervised Release while being held pending the

4

Civil Commitment proceedings." Letter at 2, *United States v. Tobey*, No. DKC 03-0151 (D.Md. June 4, 2009), ECF No. 32. The letter was forwarded to the Eastern District of North Carolina, where the prior § 2241 petition was still pending.

Most recently, on May 24, 2010, Tobey filed a "Petition of Inquiry, Conformation [sic], and Enforcement of Courts [sic] Authority." The petition again questioned when Tobey's supervised release began. (ECF No. 1). Because the petition appeared to challenge the execution or computation of his sentence, it was docketed as a petition for habeas corpus under 28 U.S.C. § 2241. *See United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989). This time, however, the court kept the petition and appointed counsel. (ECF No. 5).[1]

---

[1] The government did not object to this court's jurisdiction over Tobey's most recent § 2241 petition. *See* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."). Therefore, the government has waived any objections premised on the court's jurisdiction under § 2241(a). *See Kanai v. McHugh*, 638 F.3d 251, 258 (4th Cir. 2011). In any event, because the petition in effect challenges potential future custody in the form of supervised release after the civil commitment matters are complete, this court is the proper place to file. Tobey asserts that his three year term of supervised release has already been completed and that any attempt to subject him to supervised release in the future would be improper (likely a double jeopardy violation). Finally, the issue is ripe for adjudication inasmuch as all relevant facts have already occurred and no likely future event will alter the outcome.

After counsel for Tobey filed an amended petition on August 23, 2010 (ECF No. 7), the government filed an opposition on September 8, 2010 (ECF No. 8). Tobey filed a reply on September 27, 2010. (ECF No. 9). Just over a month ago, on May 4, 2011, the government filed notice of two additional cases in other courts that it deemed relevant. (ECF No. 10). Tobey filed his own supplement to the petition, citing additional authority (including the Fourth Circuit's decision in *United States v. Broncheau*). (ECF No. 11). Finally, the government responded to the supplement. (ECF No. 12).

**II. Analysis**

The sole dispute here concerns when Tobey's term of supervised release began (or whether it has begun at all). Tobey argues that his supervised release started on September 7, 2007, when he was scheduled for early release from his original prison sentence. The government responds that Tobey's term of supervised release is stayed while he waits for a § 4248 civil commitment proceeding. Thus, in the government's view, Tobey still has a full three years of supervised release remaining.

The analysis necessarily begins with the language of the relevant statutes. *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir.

2011).[2] The statutory language must be read in the specific context in which it is used and in the broader context of the statute as a whole. *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008). Absent explicit legislative intent to the contrary, the court must give the words of a statute their plain and ordinary meaning. *Broughman v. Carver*, 624 F.3d 670, 675 (4th Cir. 2010).

The first relevant statute is the one governing supervised release. That provision explains, in relevant part:

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local

---

[2] No binding authority has apparently considered this particular issue, although the Fourth Circuit assumed in an unpublished decision that a defendant's period of supervised release would be stayed during his civil commitment under an analogous statute, 18 U.S.C. § 4246. *United States v. Anderson*, No. 95-7775, 1996 WL 733141, at *1 n.4 (4th Cir. Dec. 23, 1996).

7

>crime unless the imprisonment is for a
>period of less than 30 consecutive days.

18 U.S.C. § 3624(e); *see also id.* § 3583(a) (explaining that a defendant is placed on supervised release "after imprisonment"). As both parties recognize, this case principally turns on the meaning of the phrase "released from imprisonment."

The supervised release statute must be read together with § 4248(a), the statute under which Tobey is currently detained. That statute, titled "Civil commitment of a sexually dangerous person," provides in part:

> In relation to a person who is in the custody of the Bureau of Prisons, . . . the Attorney General or any individual authorized by the Attorney General or the Director of the Bureau of Prisons may certify that the person is a sexually dangerous person[.] . . . The court shall order a hearing to determine whether the person is a sexually dangerous person. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

18 U.S.C. § 4248(a). Thus, a person certified under § 4248 remains in the custody of the Bureau of Prisons until he or she receives a hearing.

Tobey argues that his detention is no longer "imprisonment" because he is no longer being held as punishment for a crime. The ordinary meaning of "imprisonment," however, suggests that it makes little difference whether Tobey's criminal sentence is

finished or not. To imprison someone is to "put [the person] in or as if in prison." *Webster's New Collegiate Dictionary* 572 (1979). Such a definition, along with others like it, focuses on the nature of the confinement as opposed to the reason for that confinement. *See, e.g.*, *Black's Law Dictionary* (9th ed. 2009) (defining imprisonment as "the state of being confined; a period of confinement"); *Oxford English Dictionary* (2d ed. 1989) (defining imprisonment as "detention in a prison or place of confinement; close or irksome confinement"). Likewise, in other legal contexts, "imprisonment" can describe more than the service of a criminal sentence.[3] *See, e.g.*, 18 U.S.C. § 3041 (permitting imprisonment before trial); *Hamdi v. Rumsfeld*, 542 U.S. 507, 540 (2004) (Souter, J., concurring) (arguing that 18 U.S.C. § 4001(a), a statute that bars imprisonment by the United States without an act of Congress, "sweep[s] beyond imprisonment for crime"); *Int'l Union, United Mine Workers of Am. v. Bagwell*,

---

[3] Tobey notes that persons detained under civil commitment statutes are not "prisoners" for purposes of the Prison Litigation Reform Act ("PLRA"). *See Michau v. Charleston Cnty.*, 434 F.3d 725, 727 (4th Cir. 2006) (finding individual detained while awaiting hearing under South Carolina's Sexually Violent Predator Act was not a prisoner). That interpretation was dictated, however, by Congress' explicit decision to limit the scope of the PLRA to "person[s] incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

512 U.S. 821, 829 (1994) (referring to the "civil imprisonment" that may result from contempt).

When one looks beyond the isolated phrase "released from imprisonment," other portions of the statute further suggest that imprisonment is *any* time in confinement, not just time served to fulfill a criminal sentence. The first sentence of § 3624(e), for instance, provides two events that should occur at the end of "imprisonment," at least where supervised release is to follow: (1) release by the Bureau of Prisons and (2) assumption of supervision by a probation officer. 18 U.S.C. § 3624(e). Neither of these two critical events has evidently happened in Tobey's case. Section 3624(d) further explains that, upon "the release of a prisoner on the expiration of a prisoner's term of imprisonment," the Bureau of Prisons must provide him with clothing, a small sum of money, and transportation away from the prison. These necessities are obviously meant to assist a prisoner in his physical departure from prison. If Tobey were correct that his "release" occurred when he finished his original sentence, he would – bizarrely – be entitled to all of these supplies despite his continuing detention.

The Supreme Court, in interpreting § 3264(e), has also broadly defined the term "imprisonment." In *United States v. Johnson*, 529 U.S. 53, 57-59 (2000), the Court consistently

equated "imprisonment," as used in the first portion of § 3264(e), with the more general notions of (a) confinement, (b) time spent in the custody of the Bureau of Prisons, or (c) time in prison. *Accord United States v. Miller*, 547 F.3d 1207, 1213 (9th Cir. 2008) (determining a defendant's transfer to state program did not commence supervised release because he remained under the custody of the Bureau of Prisons). Indeed, the Court specifically rejected the argument that "imprisonment" is limited to time spent in service of a lawful, criminal sentence. *Johnson*, 529 U.S. at 59. Although Tobey suggests *Johnson* is limited to its particular factual circumstances (which did not implicate § 4248(a)), the case provides another indication that a release from imprisonment is not always synonymous with the completion of a criminal sentence. *See United States v. Bolander*, No. 01-CR-2864-L, 2010 WL 5342202, at *2 (S.D.Cal. Dec. 21, 2010) (finding *Johnson* instructive in concluding that § 4248(a) proceeding stayed commencement of supervised release); *United States v. Wilkinson*, No. 1:CR-93-158, 2010 WL 598609, at *5 (M.D.Pa. Feb. 17, 2010) (same).

Moreover, it is also appropriate to consider the purposes of supervised release. The Fourth Circuit has instructed that courts "must construe the details of every statute in conformity with its dominating general purpose and interpret the text so far as the meaning of the words fairly permits so as to carry

11

out in particular cases Congress' generally expressed legislative policy." *Broughman*, 624 F.3d at 677 (quotation marks, brackets, and ellipses omitted); *accord McCreary Cnty. v. ACLU*, 545 U.S. 844, 861 (2005) ("Examination of purpose is a staple of statutory interpretation that makes up the daily fare of every appellate court in the country.").

The purposes of supervised release would not be served if a defendant could begin his supervised release before any physical release from incarceration. As the Fourth Circuit recently explained in *United States v. Buchanan*:

> Supervised release is not a punishment in lieu of incarceration. Rather, it is a unique method of post-confinement supervision that fulfills rehabilitative ends distinct from those served by incarceration. The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty and Congress has manifested an intent to require full service of supervised release for rehabilitative purposes.

638 F.3d 448, 451 (4th Cir. 2011) (quotation marks and citations omitted); *see also Johnson*, 529 U.S. at 59 (explaining that supervised release is intended to "assist individuals in their transition to community life"). It is hard to imagine how the purpose of helping prisoners "transition" could be served where supervised release begins and ends before the offender even reenters the community. *See Johnson v. United States*, 154 F.3d

12

569, 572 (6th Cir. 1998) (Gilman, J., dissenting) ("[A] prisoner is not being reintegrated into society while still incarcerated."). The mere fact that a person has spent additional, unanticipated time in prison certainly does not offer any assurance that his return to outside life will be any less difficult. To the contrary, persons certified as dangerous to the community pursuant to civil commitment statutes like § 4248 may merit even *more* supervision than the typical prisoner receives. It also makes no difference that persons certified under § 4248 would reenter the community from a period of "detention," as opposed to criminal incarceration in the classic sense. Congress contemplated that supervised release would benefit such individuals. *See Johnson v. United States*, 529 U.S. 694, 709 (2000) (quoting S.Rep. No. 98-225, p. 124 (1983)) (explaining that supervised release was meant to assist offenders who spent time in prison "for punishment or other purposes").

Despite the ordinary meaning of the word "imprisonment," despite the Supreme Court's construction of that word in *Johnson*, and despite the purposes of supervised release, Tobey insists that "detainees" are different. He notes that, at least in one circuit, the distinction between detention and imprisonment might be a meaningful one. In *United States v. Morales-Alejo*, 193 F.3d 1102 (9th Cir. 1999), the United States

13

Court of Appeals for the Ninth Circuit interpreted the latter portion of § 3264(e), which defines when a term of supervised release is tolled. *See* 18 U.S.C. § 3264(e) ("A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction . . ."). In the Ninth Circuit's view, detention - *i.e.*, confinement meant to ensure a defendant's appearance and protect community safety - does not toll the period of supervised release. *Id.* at 1105. On the other hand, the Ninth Circuit recognized that imprisonment - *i.e.*, incarceration following a conviction and sentence - does toll the supervised release period. *Id.*

Because the Ninth Circuit's decision concerns the *tolling* effect of a period of confinement, rather than the effect of confinement on the *commencement* of supervised release, the case is inapposite.[4] *See Buchanan*, 638 F.3d at 457 (distinguishing between § 3624(e)'s "concurrent counting" provisions and § 3624(e)'s tolling provision). The tolling and commencement provisions work in different ways. In *United States v. Penn*, 17 F.Supp.2d 440, 441-42 (D.Md. 1998), for example, Judge Motz

---

[4] Some courts have missed this distinction. *See United States v. Brown*, No. 3:04-cr-00119 JWS, 2011 WL 1831627, at *3-5 (D.Alaska May 12, 2011) (finding § 4248 certification did not stay supervised release because § 3624(e) did not specify tolling in such circumstances); *United States v. Wade*, No. 2:06-cr-00103-RCJ-GWF, slip. op. at 2-3 (D.Nev. Sept. 17, 2009) (same).

14

determined that a defendant's mistaken 17-day overstay in prison delayed the start of his supervised release by 17 days. A 17-day stint in prison after supervised release had already started, however, would obviously *not* toll the supervised release period because it is less than 30 days. *See* 18 U.S.C. § 3624(e) (explains that periods of imprisonment less than 30 days do not affect the term of supervised release). Perhaps more importantly, the tolling provision specifically refers to imprisonment "in connection with a conviction," while the commencement provision refers only to "imprisonment." In fact, the Ninth Circuit seems to have relied heavily on the critically omitted phrase - "in connection with a conviction" - to reach its narrow interpretation. *Morales-Alejo*, 193 F.3d at 1104-05.

Additionally, the difference between detention and imprisonment for purposes of the tolling provision may be meaningful in the Ninth Circuit, but the courts of this circuit have not embraced that distinction. In *United States v. Ide*, 624 F.3d 666, 669 (4th Cir. 2010), the Fourth Circuit joined three other circuit courts in disagreeing with *Morales-Alejo*. The Fourth Circuit, like the Fifth, Sixth, and Eleventh Circuits before it, recognized that any "contention that the word 'imprisoned' can only refer to confinement following a conviction is incorrect." *Id.* at 670. Thus, there is no reason

to believe that Tobey's supervised release began running merely because he became a "detainee" on September 7, 2007.

Tobey also misguidedly cites 18 U.S.C. § 3581(a) in support of his argument. That section provides that "[a] defendant who has been found guilty of an offense may be sentenced to a term of imprisonment." 18 U.S.C. § 3581(a). Tobey infers from the provision that he is not imprisoned, as he was not found guilty of an offense when he was certified and detained under § 4248(a). Section 3581(a) does not say, however, that *only* defendants found guilty of an offense may be imprisoned. Rather, § 3581(a) could be read to provide one of *many* circumstances wherein a defendant is imprisoned. In arguing to the contrary, Tobey essentially commits the logical fallacy of the denying the antecedent. *See, e.g.*, *TorPharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1329 (Fed. Cir. 2003) (explaining that "denying the antecedent" is "[a]n invalid argument of the general form: If p, then q. Not p. Therefore, not q.").

For all these reasons, an individual awaiting certification under § 4248 is not "released from imprisonment" so long as he is is in the custody and confinement of the Bureau of Prisons.[5]

---

[5] Because Tobey is merely awaiting his civil commitment hearing, the court need not address whether a prisoner's term of

Tobey has not been released from imprisonment because he was neither released from the Bureau of Prisons' custody nor released from confinement. To be sure, his original prison term is over. But § 4248 makes quite clear that Tobey is confined; from the moment the certification was filed, he was not to be released. And as a practical matter, Tobey is confined to a federal corrections institution, where he is under the custody of the Bureau of Prisons and subject to many (if not all) of the same conditions "ordinary" prisoners are. *See Timms v. Johns*, 700 F.Supp.2d 764, 769-70 (E.D.N.C. 2010) (describing conditions at FCI Butner), *rev'd on other grounds,* 627 F.3d 525 (4th Cir. 2010).

In a last effort to argue that he was indeed released from the Bureau of Prisons' custody, Tobey invokes an "inmate history" of unknown origin. (ECF No. 7-1). That history lists a "good time release" spanning two minutes – from 12:00 to 12:02 p.m. – on September 7, 2007. This administrative tracking entry is not enough to conclude Tobey was released from imprisonment. There is no allegation that Tobey was ever actually outside the custody and control of the Bureau of Prisons, and the terms of § 4248 indicate there is no possible way he could have been.

---

supervised release commences once he has *actually been* committed.

In sum, Tobey's supervised release period has not yet begun. Should he still wish to pursue relief from the length of his supervised release term, he may seek such relief under 18 U.S.C. § 3583(e)(1) at the appropriate time.

## III. Conclusion

For the foregoing reasons, Petitioner David Tobey's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
